KEITH M. KANESHIRO, Executive Director, and HAWAII CRIME COMMISSION, Petitioners, *v.* RICHARD Y. C. AU, Judge, First Circuit Court, UNITED PRESS INTERNATIONAL, VALLEY ISLE PUBLISHERS, KINAU BOYD KAMALII, JAMES LESLIE MOORE, RICK REED, and GEOFFREY SILVA, Respondents

NO. 10136

AND

CHIEF OF POLICE, Honolulu Police Department, City and County of Honolulu, Petitioner, *v.* STATE OF HAWAII, RICHARD Y. C. AU, Judge, First Circuit Court, KINAU BOYD KAMALII, VALLEY ISLE PUBLISHERS, JAMES LESLIE MOORE, RICK REED, GEOFFREY SILVA, and UNITED PRESS INTERNATIONAL, Respondents

NO. 10139

(CIVIL NO. 51880)

NOVEMBER 19, 1984

NAKAMURA, ACTING C.J., PADGETT, J., INTERMEDIATE COURT OF APPEALS JUDGE TANAKA, IN PLACE OF CHIEF JUSTICE LUM, RECUSED, CIRCUIT JUDGE TSUKIYAMA, IN PLACE OF ASSOCIATE JUSTICE HAYASHI, RECUSED, AND CIRCUIT JUDGE ACOBA, IN PLACE OF ASSOCIATE JUSTICE WAKATSUKI, DISQUALIFIED

OPINION OF THE COURT BY PADGETT, J.

Two petitions for writs of prohibition against the Honorable Richard Y. C. Au, circuit judge of the First Circuit, are before us.

No. 10136 is brought by Keith M. Kaneshiro, Executive Director of the Hawaii Crime Commission and the Hawaii Crime Commission, and No. 10139 is sought by Douglas Gibb, Jr., Chief of Police of the City and County of Honolulu. Both arise out of three written orders entered below in the underlying case. They are (1) "Order Denying Motion to Quash Subpoenas Duces Tecum or for Protective Order and Motion to Quash Subpoena Duces Tecum" entered July 30, 1984; (2) "Order Concerning Procedures for *In Camera* Inspection of Documents Subpoenaed from the Honolulu Police Department" entered August 22, 1984; and (3) "Order Denying Motion to Exclude Parties and Their Counsel from *In Camera* Inspection and for Reconsideration" entered August 30, 1984.

We issued a temporary stay of Judge Au's orders and directed answers to the petitions. In No. 10136, the remaining relief sought by the petition was

> 3. Issue a Writ prohibiting the Respondents from enforcing the Order Denying the Motion to Quash Subpoenas Duces Tecum and ordering Petitioners Kaneshiro and Crime Commission to produce materials subpoenaed for an in camera inspection; and
>
> 4. Grant other relief as may be found necessary.

In No. 10139, the remaining relief sought was

> 2. Issue an order prohibiting Respondent Au during his *in camera* inspection from permitting the parties and their counsel to be present to review and object to the HPD's non-production of privileged documents; and
>
> 3. Issue an order prohibiting Respondent Au during his *in camera* inspection from requiring production of privileged documents by the HPD which are beyond the scope of the Other Named Respondents' Offers of Proof.

On a review of the record before us, it is clear that the orders entered were well within the circuit judge's jurisdiction and authority and that there is no basis for issuing writs in the terms prayed for in the quoted paragraph 3 in No. 10136 or in the quoted paragraphs 2 and 3 in No. 10139.

However, in No. 10136, there was a prayer for granting such other relief as may be found necessary. Having consolidated the two cases for purposes of argument, we will consider that prayer as applicable to both cases.

The underlying action was a suit brought by two public officials claiming to have been defamed by statements made about them, with respect to matters not involved in the discharge of their duties as public officials. That case was before this court in *Mehau v. Gannett Pacific Corp.*, 66 Haw. 133, 658 P.2d 312 (1983). In that decision, this court noted that because the plaintiffs were public officials it would be necessary for them to prove that a particular defendant had acted with "malice", as that term is defined in *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and the legion of cases which have followed from that seminal decision. This court reversed the summary judgments on the issue of "malice" in favor of two defendants, respondents here, United Press International and Kinau Kamalii, and remanded the case for further proceedings.

In the course of those proceedings, UPI issued two subpoenas duces tecum, one to Keith M. Kaneshiro, Executive Director of Hawaii Crime Commission and the other to the custodian of records of the Hawaii Crime Commission. Both were cast in identical terms with respect to the documents to be produced. They appear to require the persons subpoenaed to produce virtually every scrap of paper the Commission may have pertaining to the reports which it has prepared over the life of the Commission.[1]

Respondent Kinau Kamalii caused the issuance to the Honolulu Police Department of a subpoena for virtually every scrap of paper the Department might have pertaining to the plaintiff Mehau, the code name Lemans, the code name Firebird and six other named individuals.

Predictably, the responses of the Hawaii Crime Commission and the Honolulu Police Department, to these sweeping subpoenas, were motions to quash them. It was in the course of the proceedings that followed, before the circuit judge, that the orders complained of in the petitions for writs of prohibition were entered.

---

[1] It is possible to read the subpoena more narrowly to require the Commission to produce every scrap of paper it has relating to the plaintiff Larry Mehau, the code name Lemans, the code name Firebird, as well as every scrap of paper the Commission has relating to 15 quoted terms used in the Commission's August 1978 report on organized crime to the legislature.

We here point out that in this opinion we are dealing (1) with a libel action, and not with an action brought because of claimed misconduct or dereliction of duty on the part of some public official or agency; (2) with sweeping, dragnet-type subpoenas for materials contained in the investigatory files of agencies charged with criminal investigation. As counsel for the subpoenaing respondents admitted, at oral argument, they made no attempt to draw a bead upon the materials they wanted, but instead made the subpoenas as broad as possible. The guidelines which we therefore will lay down in the following paragraphs are confined to the unique factual situation in these two cases.

These two cases involved a conflict between the right of parties to litigation to discover the facts through the production of documents not privileged from discovery, as provided under Rules 26-37, HRCP and the legitimate concerns, of governmental agencies charged with the investigation of criminal activities, that the effectiveness of those investigations not be impeded, either by the effect of revelation of confidential sources and materials in the course of discovery during unrelated litigation, or by premature disclosure of the progress of the investigation. In *Mehau v. Gannett Pacific Corp., supra,* this court recognized that because of these concerns, the HPD had a qualified privilege with respect to its investigatory files.

Because the resolution of the conflict, between the right of discovery and the qualified privilege, is of considerable public importance, we will exercise our power of supervision over the circuit courts under HRS § 602-4 (see *Gannett Pacific Corp. v. Richardson,* 59 Haw. 224, 580 P.2d 49 (1978)), and grant partial relief in the form of instructions to the circuit court.

In so doing it is necessary to deal with certain legal issues, either raised by the parties, or implicit in the situation as it was before the circuit judge.

Although the aforementioned conflict, between the policies of discovery and confidentiality, was self-evident, both sides came into the court below playing "hardball" and pushing for as much as they could get. This, perhaps, was inherent in the situation. The trial judge made a commendable effort to strike an equitable balance between the two conflicting policies and we see no abuse of discretion in his adoption of that course. In a situation where the com-

peting policies here involved must be balanced, the trial judge is vested with wide discretion.

However, the fact that we view the course adopted in this case to be within the range of that discretion, does not mean that alternative courses could not have been adopted, in the exercise of that discretion. For example, in *Mehau v. Gannett Pacific Corp., supra,* this court upheld a denial of the discovery of the Honolulu Police Department's investigatory files where the investigation was a continuing one.[2] Another possible course of action would be to require the parties issuing the subpoenas to make a good faith attempt to narrow the scope of the documents requested, and see if that did not serve their discovery purposes, before requiring a more sweeping production of criminal investigatory files. The offers of proof filed by respondents UPI and Kamalii in the present case seem to turn upon a particular alleged drug deal and subsequent actions concerning the same, and thus narrower subpoenas, at least as an initial matter, apparently could have been sought.[3]

With the exception of the relatively minor matters we mention below, we approve of the trial judge's course of action, which consisted essentially of four steps. (1) The production of documents to which no claim of privilege was asserted. (2) The production, for review by the judge *in camera,* of the documents to which such a claim was asserted. (3) The preparation by the agencies of indices

---

[2] In that case, this court noted that the passage of time may have altered circumstances and that a current evaluation of the privilege claim would serve the interests of all concerned. We note that no express findings by the trial judge, dealing with those matters, were made prior to the issuance of the orders presently under discussion. We assume that the fact that the orders issued indicates an implicit finding by the trial judge that the passage of time had altered the circumstances in the case.

[3] The offers of proof, according to their terms, were largely bottomed upon a deposition of one Scott Shirai, a reporter whose information as to the particular incident and the allegations against the plaintiff Mehau came from "confidential sources". It is somewhat ironic that the media vociferously urge upon the courts that a reporter's confidential sources be protected from disclosure (see for example *In Re Goodfader,* 45 Haw. 317, 367 P.2d 472 (1961)), and yet, we here have United Press International, a not inconsiderable media agency, subpoenaing documents, some of which, if produced, would almost certainly reveal the Hawaii Crime Commission's confidential sources. Of course, in litigation, counsel frequently take positions based upon "whose ox is being gored" and many, if not most lawyers, subscribe to the old aphorism that "consistency is a virtue of small minds."

and synopses of the claimed privileged documents to be served on subpoenaing defendants. (4) The submission of written offers of proof by the subpoenaing defendants.

## THE EFFECT OF HRS § 843-6

The petitioners in No. 10136 contend that HRS § 843-6 (formerly § 843-8) combined with HRE 502 creates an absolute privilege against disclosure for the Commission's documents. We do not read the section and rule in that manner and we reject that contention. However, HRS § 843-6 makes it a class C felony for any employee of the Hawaii Crime Commission wilfully to disclose any confidential information without authorization of the Commission. The subpoenas in question were issued to Keith M. Kaneshiro, who is an employee of the Commission, and to the custodian of records, who presumably is also an employee. The subpoenas were not issued to the Hawaii Crime Commission and it did not, itself, participate in the hearings below. On the other hand, the Hawaii Crime Commission is before us in No. 10136 seeking relief so that we have jurisdiction over it.

In any order concerning the documents of the Hawaii Crime Commission, the court should not place employees of the Commission in the unenviable position of subjecting themselves to criminal proceedings under the statute if they comply with the court's order, or to contempt, if they do not. The court should handle the matter either by requiring new subpoenas to the Commission itself or otherwise frame its orders so that it is the Commission itself which is required to produce any documents.

## "MALICE" UNDER THE NEW YORK TIMES STANDARD

As we have noted, the court below required respondents UPI and Kamalii to file offers of proof. UPI's offer of proof stated that the documents sought were with respect to both the issue of malice and the defense of truth. Kamalii's offer of proof was limited to the defense of truth. The defense of truth comes into play only if the particular defendant acted with "malice".

Since "malice" as defined in *New York Times, supra,* is something that existed at the time of the publications complained of and since

the information contained in the documents sought was apparently unknown to respondents UPI and Kamalii at the time of the publications in question,[4] we cannot, on the present record, say that the documents sought will be relevant or will lead to relevant evidence. Yet this is the test for discovery of documents not subject to a privilege. 8 Wright & Miller, *Federal Practice and Procedure* § 2007 at page 40 (1970).

The court below should first make a determination as to whether the documents sought are discoverable for the purposes of the issue of "malice". If the court determines that they are not, the court should, pursuant to HRCP Rule 42(b), order a separate trial of that issue in advance of the rest of the case and put the production of the investigatory files on hold until that trial is completed. The reason for this procedure is that if the documents are not discoverable on the issue of "malice", and defendants nevertheless prevail on that issue (an issue on which the plaintiffs have the burden of proof), then the conflict between the public policies of discovery and confidentiality will not have to be resolved because the case will be ended without proceeding further.

On the other hand, if the court below determines that the matters sought are discoverable with respect to the issue of "malice", or if the respondents-defendants lose on that issue, then the conflict will have to be resolved. In that event, certain deficiencies in the orders entered below need to be corrected.

### ORDERS TO PRODUCE SHOULD SPELL OUT THE CONDITIONS EXPRESSLY

The order of July 30 with respect to the documents of the Crime Commission states that the conditions of production will be determined at a following hearing on August 2. No written order as to those conditions was ever entered. Obviously, since the court's power to enforce such an order is by way of contempt, any order

---

[4] We note that the UPI's publications under attack apparently occurred on June 15 and 16, 1977, *Mehau v. Gannett, supra,* while the act creating the Hawaii Crime Commission did not take effect until June 27, 1977. Act 16, Sp. Session Laws of 1977.

for discovery must, within its four corners, spell out the conditions, expressly and in detail.

## IN CAMERA INSPECTIONS OF DOCUMENTS

With respect to the *in camera* inspection by the court of any documents claimed by either the Hawaii Crime Commission or the Honolulu Police Department to be privileged, that inspection should not take place in the presence of the parties and/or their counsel.

## INDICES AND SYNOPSES

With respect to any index or summary of documents, which the court requires the Hawaii Crime Commission or the Honolulu Police Department to prepare and serve on the respondents with respect to any documents claimed to be confidential, the court's order, again, should state the details required to be set forth in the index or synopsis, in express terms, and not by reference to requirements stated in other decisions, whether from this jurisdiction, or elsewhere.

Moreover, the order should not require detail to such an extent that the materials in the index or synopsis, of themselves, breach the confidentiality of the documents.

The stay heretofore entered is dissolved, and the court below is instructed to proceed in accordance with this decision.

*Keith M. Kaneshiro,* Deputy Attorney General, and *James T. Countiss* (Staff Attorney, Hawaii Crime Commission) on the petition and supplemental memorandum, for petitioners Kaneshiro and Hawaii Crime Commission.

*Wesley F. Fong (Adrienne Sepaniak King* and *Colleen K. Hirai* with him on the petition and supplemental memorandum), Deputies Corporation Counsel, for petitioner Chief of Police.

*Paul Alston (Sheryl L. Nicholson* on the memoranda; *Paul, Johnson & Alston* of counsel) for respondent United Press International.

*David L. Turk (Nathan J. Sult* with him on the memoranda) for respondent Kamalii.

*Rick Reed* respondent pro se.

*Stanley Yamada (Randolph R. Slaton* and *John R. Williams* on the joinder; *Chee, Oshiro, Williams & Slaton* of counsel) for respondent Valley Isle Publishers.